[Crim. No. 13117. Fourth Dist., Div. One. Nov. 25, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EDWARD TRUETT, Defendant and Appellant.

158

COUNSEL

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Patricia D. Benke, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FROEHLICH, J.***—Appellant entered a plea of guilty to violation of Penal Code section 314, subdivision 1,[1] indecent exposure, and admitted a prior conviction under the same section. The crime, committed in November of 1979, involved a display of the defendant's penis to two girls, ages 11 and 14, in front of a Foster Freeze store. A witness described the defendant as "sitting at a table masturbating in front of two little girls." Appellant's history of indecent exposures commenced eight years earlier, when he was seventeen years old, embracing three incidents of indecent exposure, one of which was to a fourteen-year-old girl. He suffered subsequent convictions based upon peeping into a woman's bedroom (1974), displaying an erect penis in front of a glass door at the main entrance of a convalescent hospital (1976), and four additional convictions from 1976 through 1979, including an incident of tapping at a victim's kitchen window to alert the occupant to his masturbation. His punishment and/or treatment for these offenses included a six-month stint in a mental hospital in Texas, two years incarceration in a Texas state prison, eighteen months in a facility in Texas for youthful offenders, a period of treatment at the Camarillo State Hospital in California (which he left without permission), several periods of treatment in Patton State Hospital in California, and lastly a court-ordered stay at Gateway Psychiatric Hospital in Los Angeles, from which he escaped in October of 1979—one month prior to the crime giving rise to this case. At the time of his arrest, he was subject to a no-bail bench warrant.

Indecent exposure is a misdemeanor under California law. The admission of a prior conviction of indecent exposure elevates a second conviction, however, to a felony permitting incarceration in prison for sixteen months, two or three years (§ 18). The punishment imposed upon the appellant was the mid-term of two years. ▆ The sole ground of appeal is that this punishment violates the prohibition against cruel and unusual punishment found in article I, section 17 (formerly art. I, § 6.) of the California Constitution and the Eighth Amendment to the federal Constitution. Appellant's contention is that indecent exposure is at best a public annoyance, a reflection of medical rather than criminal defect, and that to incarcerate one in prison for an act which is essentially involuntary is a punishment so unrelated to the culpability of

---

*Assigned by the Chairperson of the Judicial Council.
[1]All statutory references are to the Penal Code unless otherwise specified.

the perpetrator or the minor damage done either to the victims or society as to be constitutionally impermissibly cruel and unusual.

The predecessor to section 314, subdivision 1 was section 314, which provided a term of incarceration of from one year to life in prison. This penalty was found in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], to be unconstitutionally excessive, the court concluding that in keeping with the indeterminate nature of the then sentencing law, it was required to view the sentence in terms of its maximum potential. Life in prison for what the court termed a "public annoyance" was found under any of several criteria to be so disproportionate to the crime as to shock the conscience and offend fundamental notions of human dignity. (*Lynch, supra*, at p. 424.) In reaching this conclusion the court identified three techniques by which the constitutionality of a legislatively selected penalty might be measured. These are: (1) the "proportionality" of the punishment to the offense—is a severe punishment prescribed for a serious crime, or is it an "extraordinary penalty for 'a crime of ordinary gravity committed under ordinary circumstances' (italics omitted; [citations])." (*Lynch, supra*, at p. 425); (2) comparison of the punishment with penalties provided for similar offenses within the same jurisdiction; and (3) comparison of the punishment with that prescribed for the same offense in other jurisdictions.

Concerning the test of "proportionality," we quite agree with the succinct statement contained in *People* v. *Curry* (1977) 76 Cal.App.3d 181, 187 [142 Cal.Rptr. 649], that "[w]e cannot see in the penalty now imposed any of the extreme penalization that *Lynch* held void." Even appellant concedes that a one-year sentence is constitutionally permissible, and he does not challenge the recidivist portion of the statute or the fact that registration is required under section 290. Presumably, he accepts the constitutionality of two offenses committed on two different days which would permit imposition of two one-year consecutive sentences in county jail but not a felony sentence to a second offense committed after punishment for the first offense has already been served. The comparison of incarceration in jail for one year and confinement in prison for three years does not reflect a bright line of difference but only a modest increase in degree.

Sociologists and psychiatrists may well argue that the delicts of an indecent exposer should not be deemed criminal conduct but should be subject only to medical treatment. This argument is most difficult to make in a judicial forum, in light of the acceptance by *Lynch* and other

authorities of the criminal nature of the conduct. Appellant therefore must convince us that the penalty prescribed by law is morally shocking, offensive to the conscience, or to return to the initial characterization, "disproportionate." A review of the history of appellant himself is a most compelling argument for the contrary conclusion. Over a period of a decade he has been an apparently uncontrolled and uncontrollable individual, imposing his disagreeable tendencies upon women, young and old, in various settings. The best efforts of medical and penological practitioners in two of the most populous states of the country have been to no avail. The last incident of indecent exposure is committed within a month of his escape from a medical institution, and at a time when he was subject to a warrant for arrest for violation of his probation. To suggest that society is precluded from imposing a further term of some years in prison for this conduct is, in our view, to verge on the absurd.

The second *Lynch* guideline requires a comparison of the questioned penalty with those provided for similar offenses within the jurisdiction. Such comparison does not support the appeal. At the outset it must be noticed that the penalty provided—sixteen months, two or three years —is the minimum sentence choice provided in California under the determinate sentence law for a felony. By definition, then, the penalty is the least that can be imposed consistent with felonious characterization. As might be expected, other less-than-major felonies carry the same punishment potential. Examples of categories of crimes in the sex perversion area, which might be assumed to have some commonality with indecent exposure and which carry a like sentence potential, are voluntary sodomy with a minor (§ 286), voluntary oral copulation with a minor (§ 288a), and a second conviction of molestation of a minor (§ 647a).

Looking to sister jurisdictions, to complete the three-pronged analysis suggested by *Lynch*, we find California's law to be not inconsistent with at least a substantial number of jurisdictions. All 50 states have declared indecent exposure to be a crime. (*Lynch, supra*, 8 Cal.3d at p. 436.) Some states increase the sanction where the victim is a minor; others have a constant punishment. Oklahoma treats the first offense as a felony with a minimum punishment of 30 days and/or $100 plus the maximum 10 years and/or $10,000. (Okla. Stats. Ann., § 21-1021.) In addition to California, five other states label the second offense a felony with a range of punishment of two years (Pa.) to life (Mich.). (Md. Ann. Code, § 27-335A; Mich. Comp. Laws, §§ 750.335a, 750.10a; Nev.

Rev. Stats, §§ 201.220, 193.140; Pa. Stats. Ann., §§ 18-3127, 18-1101, 18-1104; Vt. Stats. Ann., § 13-2601.) Those states that concern themselves with whether the victim is a minor have punishment varying from five years to fifteen years. (Fla. Stats. Ann., §§ 800.04, 775.083; La. Stats. Ann., §§ 14:106A(1), 14:106G(1); Va. Code, §§ 18.2-387, 18.2-370, 18.2-11(a).) Thus a total of 10 states treat the crime of indecent exposure in a similar fashion to that of California. What is the "perfect" sentence to this crime is unknown. "We all, of course, would like to think that we are 'moving down the road toward human decency[.]' *Furman* v. *Georgia*, 408 U.S., [238] at 410 (Blackmun, J., dissenting). Within the confines of this judicial proceeding, however, we have no way of knowing in which direction that road lies. Penologists themselves have been unable to agree whether sentences should be light or heavy, discretionary or determinate." (*Rummel* v. *Estelle* (1980) 445 U.S. 263, 283 [63 L.Ed.2d 382, 396-397, 100 S.Ct. 1133, 1144]; fns. omitted.)

The jurisprudentially satisfying approach to this appeal, however, is not found in detailed comparisons of ours or other statutes, but is derived by identifying the proper judicial function as pertains to the establishment of criminal penalties. Penal Code section 6 provides in part: "No act or omission [occurring after the code has taken effect] is criminal or punishable, except as prescribed or authorized by this Code, or by some of the statutes which it specifies as continuing in force and as not affected by its provisions, or by some ordinance, municipal, county, or township regulation ...."

■ "This section embodies a fundamental principle of our tripartite form of government, i.e., that subject to the constitutional prohibition against cruel and unusual punishment, the power to define crimes and fix penalties is vested *exclusively* in the legislative branch. [Citations.]" (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; italics added.) It is clear that neither the state nor federal Constitution gives any member of the judiciary a "roving commission to impose upon [society his] own notions of enlightened policy ...." (*Rummel* v. *Estelle, supra,* 445 U.S. 263, 285 [63 L.Ed.2d 382, 398, 100 S.Ct. 1133, 1145], conc. opn. Stewart, J.) It is the Legislature which has the broadest discretion possible in enacting penal statutes and in specifying punishment for crime. (*People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880].) Admittedly, the sole function of the judiciary is to examine legislative acts

in light of constitutional limitations to assure that the punishment imposed is exercised within the limits of civilized standards (*Trop* v. *Dulles* (1958) 356 U.S. 86, 100 [2 L.Ed.2d 630, 642, 78 S.Ct. 590]) for to do otherwise would allow the Legislature to be the sole judge of the permissible means and extent of punishment, rendering the constitutional prohibition against cruel and unusual punishments superfluous. (*People* v. *Anderson, supra*, 6 Cal.3d at p. 640.)  ▮  Judicial sensitivity, however, to the legislative prerogative has been manifested in different ways. In words, our high court has said: "[T]he determination of whether a legislatively prescribed punishment is constitutionally excessive is not a duty which the courts eagerly assume or lightly discharge.... '"[M]ere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality *clearly, positively and unmistakably* appears."' [Citations.]" (*In re Lynch, supra*, 8 Cal.3d 410, 414-415.) In actions, the United States Supreme Court has been chary of declaring crimes unconstitutional under the Eighth Amendment. The cases in which they have done so are dramatic, frequently involving the death penalty and clearly shocking the conscience. For example, in *Weems* v. *United States* (1910) 217 U.S. 349 [54 L.Ed. 793, 30 S.Ct. 544], the crime involved a disbursing officer in a Phillipine government bureau falsifying two entries in his cash box. The mandatory punishment for the offense was "confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council. These parts of his penalty endure for the term of imprisonment.... His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty. He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicil without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing." (*Id.*, at p. 366 [54 L.Ed. at p. 798].)

In *Trop* v. *Dulles, supra*, 356 U.S. 86, 101 [2 L.Ed.2d 630, 643], holding the loss of citizenship by reason of conviction for wartime desertion where there was no attempt to give allegiance to a foreign power barred by the Eighth Amendment, the court said: "There may be involved no physical mistreatment, no primitive torture. There is instead the total destruction of the individual's status in organized society. It is

a form of punishment more primitive than torture, for it destroys for the individual the political existence that was centuries in the development. The punishment strips the citizen of his status in the national and international political community. His very existence is at the sufferance of the country in which he happens to find himself. While any one country may accord him some rights, and presumably as long as he remained in this country he would enjoy the limited rights of an alien, no country need do so because he is stateless. Furthermore, his enjoyment of even the limited rights of an alien might be subject to termination any time by reason of deportation. In short, the expatriate has lost the right to have rights." (Fn. omitted.)

And in two recent cases involving the death penalty, our high court has noted: "The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity." (*Furman* v. *Georgia* (1972) 408 U.S. 238, 306 [33 L.Ed.2d 346, 388, 92 S.Ct. 2726].)

California cases declaring punishment to be cruel and unusual under our state Constitution similarly involve punishment of life imprisonment or death. (See, e.g., *In re Lynch, supra*, 8 Cal.3d 410; *People* v. *Anderson, supra*, 6 Cal.3d 628.)

Judicial intervention in the determination of criminal penalties, then, is not to be asserted except in the most extraordinary of cases. ■ As stated in *Lynch, supra*, 8 Cal.3d at pages 423-424: "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, the responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." ■ No ground exists for concluding that the repeated offense of indecent exposure may not be classified by the Legislature as a felony. Once so classified, fixing the pen-

alty is a matter of legislative discretion, and the discretion is not abused by selecting the least severe set of alternative felony penalties prescribed by law. There is therefore no constitutional infirmity in the legal framework utilized as the bases for appellant's sentence, and his appeal must be denied.

Judgment affirmed.

Wiener, J., concurred.

**STANIFORTH, Acting P. J.**—I concur in the judgment.

Truett has a history of voyeurism, public masturbation, and lewd telephone calls since the age of 17. He is now 26 years old. Treatment and counselling have been ineffective and the reasonable probability is that, without successful therapeutic intervention, Truett will continue to expose himself and be a nuisance to the public.

From the probation report we learn that Truett's background, symptomatology suggests a "textbook" case of exhibitionism. Experts in the field generally agree that exhibitionism is a species of personality disorder and that compulsory exhibitionism is characterized by passivity, narcissism, fear of castration. We do not treat here with the violent aggressive rapist-molester type of defendant whose wrong demands, prima facie, long prison terms. The typical exhibitionist is not a criminally antisocial individual but rather someone in dire need of psychological treatment. (See *Millard v. Harris* (D.C.Cir. 1968) 406 F.2d 964, 978 (conc. opn. of Wright, J.); Rickles, Exhibitionism (1950) pp. 65-66; Gaylin, *Psychiatry and the Law, Partners in Crime* (1965) 8 Colum. U.F. 23, 25; Mathis, The Exhibitionist, Medical Aspects of Human Sexuality (1979) pp. 89, 97; Riley, *Exhibitionism: A Psycho-Legal Perspective* (1979) 16 San Diego L.Rev. 853, 855.)

Truett was sentenced to two years in prison after pleading guilty to a second violation of Penal Code section 314, subdivision 1. One fact, and one fact alone, saves this sentence from being in blatant violation of the constitutional prohibition against cruel or unusual punishment for the cogent reasons outlined in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal. Rptr. 217, 503 P.2d 921], and *Tracy v. Municipal Court* (1978) 22 Cal.3d 760, 765 [150 Cal.Rptr. 785, 587 P.2d 227]. Truett's victims here were 11- and 14-year-old females. The minority of the victim is a

common and rational legislative basis for a sentence that would otherwise fail to pass constitutional muster. I would uphold constitutionality of a two-year prison sentence for a second offense of public exhibitionism on the basis of the minority of these victims.

A petition for a rehearing was denied December 11, 1981, and appellant's petition for a hearing by the Supreme Court was denied January 20, 1982.