[No. B022283. Second Dist., Div. Three. Mar. 3, 1987.]

In re JOHN ROBERT DUNCAN on Habeas Corpus.

**COUNSEL**

Charles Downing for Petitioner.

Ira Reiner, District Attorney, Donald J. Kaplan and Arnold T. Guminski, Deputy District Attorneys, for Respondent.

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

In this petition for a writ of habeas corpus we are asked to decide whether Penal Code section 311.3, subdivision (a), which provides "[a] person is guilty of sexual exploitation of a child when he or she knowingly develop[s], duplicate[s], print[s], or exchange[s] any film, photograph, video tape, negative, or slide in which a person under the age of 14 years engaged in an act of sexual conduct," is violative of the rights of free expression and privacy

guaranteed by the Constitution of the United States and the Constitution of the State of California.[1] We answer that it is not.

STATEMENT OF FACTS

On July 20, 1983, John Robert Duncan (petitioner) was charged with two counts of violation of Penal Code section 311.3, subdivision (a). In count I, it was alleged that ". . . on or about February 1983, [a misdemeanor] was committed by [petitioner] . . . who did willfully, unlawfully, and knowingly photograph, develop, duplicate, print, or exchange any film, photograph, videotape, negative, or slide in which a person under the age of 14 years is engaged in an act of sexual conduct." Count II of the complaint alleged the identical substantive violation which was declared to have occurred " . . . on or about April, 1983 . . . ."

Petitioner entered a plea of not guilty. Thereafter, petitioner's section 1538.5 motion to suppress evidence which had been seized from his house at the time of his arrest was denied.

The evidence received during the court trial consisted of seven Polaroid photographs found in a photo album in an attache case in the attic and a Polaroid "Super Shooter" camera with an attachment for making copies,

---

[1] The full text of Penal Code section 311.3 is as follows: "(a) A person is guilty of sexual exploitation of a child when he or she knowingly develop, duplicate, print, or exchange any film, photograph, video tape, negative, or slide in which a person under the age of 14 years engaged in an act of sexual conduct.

"(b) As used in this section 'sexual conduct' means any of the following:

"(1) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between humans and animals.

"(2) Penetration of the vagina or rectum by any object.

"(3) Masturbation, for the purpose of sexual stimulation of the viewer.

"(4) Sadomasochistic abuse for the purpose of sexual stimulation of the viewer.

"(5) Exhibition of the genitals, pubic or rectal areas of any person for the purpose of sexual stimulation of the viewer.

"(6) Defecation or urination for the purpose of sexual stimulation of the viewer.

"(c) Subdivision (a) shall not apply to the activities of law enforcement and prosecution agencies in the investigation and prosecution of criminal offenses or to legitimate medical, scientific, or educational activities, or to lawful conduct between spouses.

"(d) Every person who violates subdivision (a) is punishable by a fine of not more than two thousand dollars ($2,000) or by imprisonment in the county jail for not more than one year, or by both such fine and imprisonment. If such person has been previously convicted of a violation of subdivision (a) or any section of this chapter, he or she is punishable by imprisonment in the state prison.

"(e) The provisions of this section shall not apply to an employee of a commercial film developer who is acting within the scope of his employment and in accordance with the instructions of his employer, provided that the employee has no financial interest in the commercial developer by which he is employed."

All further statutory references are to the Penal Code unless otherwise indicated.

which had been seized during a police search of petitioner's residence pursuant to a search warrant. The manufacturer's coding on the back of three of the photographs indicated that the film had been manufactured in February 1983. The manufacturer's coding on the back of the other four photographs indicated that that film had been manufactured in April 1983. Inside the camera was film with the same code marking that appeared on the four photographs on film manufactured in April 1983.

Police officer William Dowerin of the Sexually Exploited Child Unit of Juvenile Division, City of Los Angeles, testified that he had corresponded with petitioner under various assumed names since 1978, when petitioner was confined to a state hospital as a mentally disordered sex offender. He testified that the ages of the children appearing in the photographs were approximately four to fourteen years of age and described the photographs, as follows: "2a and 2c one is a child which is completely nude with the legs spread apart and the second child is wearing a dress with no panties where it shows her vagina area. People's 2b depicts a male adult penis touching the vagina with what appears to be a female juvenile under the age of fourteen."

"2d depicts a male adult penis close to or touching the mouth of what appears to be a female juvenile under the age of fourteen and there appears to be white liquid around the child's mouth."

"2e depicts a female child under the age of ten wearing [what] looks like a skirt and blouse with no underwear, her legs are spread apart and hands are on her vagina. I am aware of who this child is based upon prior investigation."

"2f is a picture of a female approximately four to five years of age wearing a dress but no underwear and the vagina is shown, again, this is the same child as in 2[c] but at a younger age."

"2g, two female juveniles approximately eight years of age, one female juvenile was holding some type of object in the vagina of the second child and touching her vagina with her hands."

Officer Dowerin further testified that pictures 2b, 2c, and 2f were in existence in 1977, and were implicated in the investigation of petitioner which had occurred during that year. He was unable to date the remaining four polaroid pictures received in evidence, beyond testifying as to the date of manufacture of the Polaroid film on which they appeared. He was unable to testify as to who reproduced the seven pictures and could not say any more than that they had been reproduced in 1983.

Petitioner testified that he first saw the photographs introduced at trial six years earlier but denied that he had reproduced any of them in the last year.

Petitioner was found guilty on both counts of the complaint and sentenced to two consecutive one-year terms in county jail. The judgment was affirmed on appeal and petitioner's petition to the superior court for a writ of habeas corpus was denied.

On August 8, 1986, he filed a petition for writ of habeas corpus in this court.

CONTENTIONS

Petitioner asserts four major contentions: 1. That section 311.3, subdivision (a), is unconstitutional on its face and as applied to him under the First and Fourteenth Amendments of the Constitution of the United States and article I, sections 2 and 15 of the Constitution of the State of California; and that petitioner, having been tried and convicted of a violation of section 311.3, subdivision (a), was deprived of First, Fourth and Fourteenth Amendment guarantees;

2. That section 311.3, subdivision (a), unconstitutionally interferes with petitioner's right of privacy as guaranteed by the Constitution of the United States and article I, section 1 of the Constitution of California;[2]

3. That petitioner was deprived of procedural and substantive due process in that he did not receive effective assistance of trial and appellate counsel as is his due under the Sixth and Fourteenth Amendments; and

4. That the sentence imposed by the trial court constitutes multiple punishment of the same offense contrary to the dictates of the Fifth and Fourteenth amendments and/or cruel and unusual punishment under the Eighth and Fourteenth Amendments.

We find there is no merit to petitioner's contentions and therefore deny his petition.

---

[2]The right of privacy exists under the federal Constitution, and finds its roots in the First Amendment, in the Fourth and Fifth Amendments, in the penumbras of the Bill of Rights, in the Ninth Amendment, and in the concept of liberty guaranteed by the Fourteenth Amendment. (*Roe* v. *Wade* (1973) 410 U.S. 113, 152 [35 L.Ed.2d 147, 176-177, 93 S.Ct. 705].) The right of privacy is expressly protected under article I, section 1 of the California Constitution. (See *People* v. *Privitera* (1979) 23 Cal.3d 697, 709-710 [153 Cal.Rptr. 431, 591 P.2d 919, 59 A.L.R.4th 178].)

## DISCUSSION

### I. *The Constitutionality of Section 311.3, subdivision (a).*

Initially, we address petitioner's challenges to the constitutionality of section 311.3, subdivision (a) (contentions 1 and 2). The thrust of his argument is that the prohibition in the penal statute is overbroad in that it criminalizes the mere possession of child pornography in the privacy of one's home in violation of the constitutional rights of free expression and privacy, citing *Stanley* v. *Georgia* (1969) 394 U.S. 557 [22 L.Ed.2d 542, 89 S.Ct. 1243], and *Bloom* v. *Municipal Court* (1976) 16 Cal.3d 71, 81 [127 Cal.Rptr. 317, 545 P.2d 229].

Petitioner argues that "a person is entitled to engage in any solitaire [*sic*] conduct he chooses entirely within the perimeter of his own home." He "does not challenge the right or power of the State to adopt legislation aimed at the eradication of *distribution* of child pornographic materials" and concedes, for purposes of argument, "the lasting harmful effect that such materials may have. . . ." Petitioner identifies the central issue as "whether or not a statute with an otherwise legitimate purpose, i.e., limitation of child pornography, can subject an individual to criminal sanctions for the mere private possession of such materials . . . ." Petitioner recognizes that the state may permissively regulate conduct in the privacy of the home if there are "extenuating circumstances" which may endanger other members of society. He contends, however, that there is no credible evidence that exposure to child pornography increases the occasions of child molestation, abuse or any other form of antisocial activity.

In *Stanley* v. *Georgia, supra,* 394 U.S. 557 , the United States Supreme Court recognized the First Amendment right to possess obscene materials in the privacy of one's own home. "If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds." (*Id.,* at p. 565 [22 L.Ed.2d at p. 550] .) The court rejected Georgia's assertion of the right to protect the individual's mind from the effects of obscenity (*ibid.*) and rejected, on the present state of knowledge, any connection between possession of obscene materials and antisocial conduct. (*Id.,* at p. 567 [22 L.Ed.2d at p. 551].)

In *Bloom* v. *Municipal Court, supra,* 16 Cal.3d 71, the California Supreme Court upheld the constitutionality of section 311.2, subdivision (a), which makes it a misdemeanor to cause obscene materials to be brought within the state, or to possess, prepare, publish or print such material with intent to

distribute such material. In doing so, the court rejected petitioner's contention that the right to possess obscene materials in the privacy of one's own home, announced in *Stanley,* implies the right not only to receive, but to sell and distribute. (*Id.,* at p. 81.)[3]

Contrary to petitioner's assertion, in the case before us, we are not dealing with the "mere possession of obscene materials" protected by the First Amendment, but with the reproduction of child pornography, the control of which is subject to different constitutional limitations.

In *New York* v. *Ferber* (1982) 458 U.S. 747 [73 L.Ed.2d 1113, 102 S.Ct. 3348], the United States Supreme Court upheld a New York statute which prohibits persons from knowingly promoting a sexual performance by a child under the age of 16 by distributing material which depicts such a performance whether the material is obscene or not. (See *First Amendment— Freedom of Speech—Child Pornography, Obscene or Not, Possesses No First Amendment Protection* (1983) 23 Santa Clara L.Rev. 675.)[4]

The Supreme Court recognized, "In recent years, the exploitive use of children in the production of pornography has become a serious national problem." (*New York* v. *Ferber, supra,* 458 U.S. 747, 749, fn. omitted [73 L.Ed.2d 1113, 1117].)[5] Acknowledging that laws directed at the dissemination of child pornography, like obscenity statutes, run the risk of suppressing protected expression by "allowing the hand of the censor to become unduly heavy," the Supreme Court nevertheless concluded that the States are entitled to greater leeway in the regulation of child pornography. "It is evident beyond the need for elaboration that a State's interest in 'safeguarding the

---

[3]The United States Supreme Court similarly has acknowledged that the right to receive information and ideas does not necessarily create a right to distribute obscene materials. (See, e.g., *United States* v. *Reidel* (1971) 402 U.S. 351 at p. 356 [28 L.Ed.2d 813, 817-818, 91 S.Ct. 1410]; *Paris Adult Theatre I* v. *Slaton* (1973) 413 U.S. 49 [37 L.Ed.2d 446, 93 S.Ct. 2628].)

[4]The statute in *Ferber* prohibits the knowing use or promotion of a child less than 16 years of age in a sexual performance. A performance is defined as " 'any play, motion picture, *photograph* or dance.' " (*Ferber, supra,* at p. 751 [73 L.Ed.2d at p. 1119], italics added.) " ' "Promote" means to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit or advertise, or to offer or agree to do the same.' " (*Ibid.*)

See *State* v. *Meadows* (1986) 28 Ohio St.3d 43 (upheld constitutionality of statute criminalizing the private possession of sexually oriented material depicting a minor participating or engaging in sexual activity, masturbation, or bestiality.)

[5]The Court continued: "The Federal Government and 47 States have sought to combat the problem with statutes specifically directed at the production of child pornography. At least half of such statutes do not require that the materials produced be legally obscene. Thirty-five States and the United States Congress have also passed legislation prohibiting the distribution of such materials; 20 States prohibit the distribution of material depicting children engaged in sexual conduct without requiring that the material be legally obscene." (*Id.,* at p. 749, fn. omitted [73 L.Ed.2d at p.)

physical and psychological well-being of a minor' is 'compelling.' [*Globe Newspaper Co.* v. *Superior Court* (1982) 457 U.S. 596, 607, 73 L.Ed.2d 248, 102 S.Ct. 2613.] 'A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens.' [*Prince* v. *Massachussetts* (1944) 321 U.S. 158, 168, 88 L.Ed. 645, 64 S.Ct. 438.] Accordingly, we have sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights. In [*Prince* v. *Massachussetts, supra*], the Court held that a statute prohibiting use of a child to distribute literature on the street was valid notwithstanding the statute's effect on a First Amendment activity. In [*Ginsberg* v. *New York* (1968) 390 U.S. 629, 20 L.Ed.2d 195, 88 S.Ct. 1274, 44 Ohio Op.2d 339] we sustained a New York law protecting children from exposure to nonobscene literature. Most recently, we held that the Government's interest in the 'well-being of its youth' justified special treatment of indecent broadcasting received by adults as well as children. [*FCC* v. *Pacifica Foundation* (1978) 438 U.S. 726, 57 L.Ed.2d 1073, 98 S.Ct. 3026.]" (*Id.,* at pp. 756-757 [73 L.Ed.2d at pp. 1122-1123].)

██ Petitioner asserts that section 311.3, in contrast to the law upheld in *Ferber,* does not require proof of an intention to distribute, and argues that as such it is overbroad in that it effectively prohibits the mere possession of child pornography.

Petitioner's argument lacks merit. Although the statute upheld in *Ferber* was primarily directed at the distribution of child pornography, it does not follow that regulation of child pornography is constitutionally limited to prohibition of its *distribution.* Furthermore, section 311.3 does not prohibit "mere possession" but rather outlaws knowing development, duplication, printing or exchange of film, photographs, video tapes, negatives or slides of children engaged in sexual acts, as defined, conduct which the Legislature has determined has a detrimental effect on children and society.

██ The purpose of section 311.3 is to protect children from sexual abuse and invasion of their privacy rights through the development and duplication of photographs, movies and video tapes depicting them engaged in sexual conduct. Legally incapable of consent, these children are perpetually exploited, first by the original performance of these acts; then by the creation of a permanent record of the conduct; again each time that record is reproduced; and then again when that photograph, film or video tape is viewed or passed on to another.[6] In addition, these materials are used to induce *other* children to engage in sexual activity.

---

[6]As noted in *Ferber, supra,* 458 U.S. 747, 759, footnote 10 [73 L.Ed.2d 1113, 1124], quoting one authority, " '[P]ornography poses an even greater threat to the child victim than does

The legislative history of section 311.3 reveals that this provision was designed "to deter pedophiles from exchanging pictures of minors and to prevent child molesters from using pictures of minors engaged in sexual conduct to suggest to their victims that such acts are acceptable." (Rep. of the Sen. Com. on Jud. on Sen. Bill No. 331 (1981-1982 Reg. Sess.) p. 2.)[7]

█ As the Supreme Court declared in *Ferber*, "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." (*Ferber, supra,* 458 U.S. at p. 757 [73 L.Ed.2d at pp. 1123-1124].)

"[V]irtually all of the States and the United States have passed legislation proscribing the production of or otherwise combating 'child pornography.' The legislative judgment, as well as the judgment found in the relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child. That judgment, we think, easily passes muster under the First Amendment." (*Id.,* at p. 758; fn. omitted [73 L.Ed.2d at pp. 1123-1124].)

█ The Supreme Court set forth guidelines concerning legislation which is designed to control child pornography: The conduct to be prohibited must be adequately defined; the offense should be limited to works that visually depict sexual conduct by children below a specified age; and the category of "sexual conduct" proscribed must also be suitably limited and described. The test of child pornography compares to the obscenity standard as follows: "A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole. We note that the distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection. As with obscenity laws, criminal responsibility may not be imposed without some element of scienter on the part of the defendant." (*Id.,* at pp. 764-765 [73 L.Ed.2d at p. 1127].)

---

sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place.' "

[7]"According to the bill's source [Joint Committee for Revision of the Penal Code], existing law contains no mechanism to prevent the noncommercial exchange of pictures showing minors engaged in acts that are currently illegal to photograph. The source states that child molesters use such pictures to convice [*sic*] children that sexual activity is acceptable. They show these pictures to their intended victims to demonstrate that other children engage in these acts." (*Ibid.*)

In light of these guidelines, we consider the constitutionality of section 311.3. In doing so, we are mindful that a statute should not be declared facially invalid on the basis of the First Amendment overbreadth doctrine unless it is substantially overbroad, particularly where conduct and not merely speech is involved. (*Ferber, supra,* 458 U.S. at p. 770 [73 L.Ed.2d at p. 1131]; *Broadrick v. Oklahoma* (1973) 413 U.S. 601, 613, 615 [37 L.Ed.2d 830, 840-842, 93 S.Ct. 2908].)

Section 311.3, subdivision (a), proscribing the development and reproduction of pictures of a child engaged in sexual conduct, is part of a statutory scheme to combat the exploitive use of children in the production of pornography. Section 311.2, subdivision (b), prohibits the distribution or possession, preparation, publication or printing, with the intent to distribute or exhibit for commercial purposes, obscene matter depicting a person under the age of 18 years engaged in sexual activity. Section 311.2, subdivisions (c) and (d) prohibit distribution of or possession with intent to distribute materials depicting a person under the age of 17 years engaged in explicit sexual conduct, even without commercial purpose and even though the material is not obscene.[8] Under section 311.4, the person who directly employs or otherwise uses a person under 17 years of age in preparing sexually explicit visual materials is guilty of a felony. (See *Review of Selected 1981 California Legislation: Crimes; sexual exploitation of children* (1982) 13 Pacific L.J. 640 et seq.)

Section 311.3 makes it a crime to "knowingly develop, duplicate, print or exchange any film, photograph, video tape, negative, or slide," thus adequately defining the prohibited conduct and including a scienter element. It appropriately limits its application to works that depict sexual conduct by children below a specified age, 14 years, and the category of "sexual conduct" proscribed is specifically defined and limited.[9] As such, it is difficult to envision its potential application into areas of protected expression. Under the guidelines set forth by the Supreme Court in *Ferber* and in light of the compelling interest of the state in the protection of children from sexual exploitation through the production and reproduction of child pornography, we hold that section 311.3 does not interfere with constitutional rights of free expression and privacy. It is neither overbroad nor invalid as applied to petitioner.

---

[8]Section 311.2, subdivisions (c) and (d) were enacted in their current form in 1984. (Stats. 1984, ch. 1489, § 1, pp. 1066-1067.) In 1981, when section 311.3 was enacted, the noncommercial production and distribution of child pornography was not outlawed. (See note 7, *ante.*)

[9]"Sexual conduct" is defined in subdivision (b) of section 311.3, set forth in footnote 1, *ante.*

## II. *Competency of counsel.*

Petitioner contends that he was deprived of effective representation of counsel at the trial level and, by appellate counsel's failure to raise that issue on appeal, was similarly deprived of effective representation on appeal. He also contends that his present counsel's representation on the petition for writ of habeas corpus in the superior court was deficient.

■ The right to competent representation at trial is grounded in the constitutional right to the assistance of counsel. (U.S. Const., Sixth Amend.; Cal. Const., art. I, § 15; *McMann* v. *Richardson* (1970) 397 U.S. 759, 771, fn. 14 [25 L.Ed. 2d 763, 773, 90 S.Ct. 1441]; *People* v. *Pope* (1979) 23 Cal.3d 412, 422 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) Inadequate representation is determined if trial counsel " 'failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates' " and " 'counsel's acts and omissions resulted in the withdrawal of a potentially meritorious defense.' " (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 581 [189 Cal.Rptr. 855, 659 P.2d 1144].) ■ Where the record does not reveal the basis for the challenged acts or omissions, a claim of ineffective assistance is appropriately made by habeas corpus proceedings, where there is an opportunity in an evidentiary hearing to have trial counsel describe his or her reasons for acting or failing to act in the manner complained of. (See §§ 1483 and 1484; e.g., *In re Williams* (1969) 1 Cal.3d 168 [81 Cal.Rptr. 784, 460 P.2d 984].) The court is then in a position to intelligently evaluate whether counsel's acts or omissions were within the range of reasonable competence. (*People* v. *Pope, supra,* 23 Cal.3d at p. 426.) Since we have not been provided with testimony regarding counsel's reasons for conducting the trial as he did, we are confined to the record. The alleged failures of petitioner's counsel will be addressed individually.

■ A. First, petitioner asserts that trial counsel was incompetent for failure to challenge the legal basis for the issuance of the search warrant which led to the police's discovery of the photographs and camera introduced as evidence against petitioner at trial. He argues that the warrant was facially defective and diligent counsel would have challenged its issuance.

A search warrant may properly be issued "upon probable cause, supported by affidavit," describing property consisting of "evidence which tends to show that sexual exploitation of a child, in violation of section 311.3, has occurred or is occurring." (§§ 1524, subd. (a)(5), 1525.)

Petitioner asserts that the affidavit of the Officer Dowerin in support of the search warrant attempted to establish reasonable cause to believe petitioner had violated section 311.3, subdivision (a) "because (1) he is a

pedophile; (2) that pedophiles do not destroy pornographic material; (3) that pedophiles retain such materials for personal gratification; (4) that pedophiles keep correspondence from other pedophiles; (5) that pedophiles gain a certain pride from exhibiting such materials; (6) that pedophiles conceal such materials from police; and (7) that materials may exist which would identify other pedophiles and/or victims. In short, the object of the search warrant was known to be a pedophile and, accordingly, reasonable cause existed to search his home."

Petitioner's description of contents of the affidavit overlooks the rendition of other significant facts, sufficient to establish probable cause to believe that the items referred to in the search warrant "may be found" at petitioner's residence and tending to show that sexual exploitation of a child, as defined in section 311.3, subdivision (a) "has occurred or is occurring" there. Of particular significance was an attached copy of a letter postmarked March 7, 1983, sent by petitioner to "Jack Roose," one of the undercover identities used by Officer Dowerin in communicating by mail with petitioner. Enclosed in the letter was a photograph that the officer had previously mailed to petitioner and another photograph taken by petitioner. Petitioner's letter states, in pertinent part, as follows: "Enclosed is your pix (which I really like) and one of mine which was taken a few years back. The girl in my pix was 10 at the time. What ages of girls do you prefer? [The affidavit of Officer Dowerin identified the child appearing in the picture sent by petitioner as a juvenile who had been involved in an investigation of petitioner which had occurred in 1977. The affidavit of Dowerin indicates that the picture sent by petitioner depicts the juvenile orally copulating petitioner].

"I think I can trust you since cops don't send pixs of young girls, but I'll have to know more about you before I can send anything good. . . .

"You can make cheap copies of polaroids from a Super Shooter which has an attachment for making copies. It's better than trying to send them in somewhere that you're not sure about. It's a good idea to have your own photolab, but its so expensive. . . ."

In light of the evidence supporting the issuance of the search warrant, petitioner's contention that counsel's failure to attack the issuance of the search warrant constituted ineffective representation is meritless.

■ B. Petitioner also contends that trial counsel's development and presentation of the entrapment defense was deficient in that he may have neglected to conduct discovery regarding the correspondence between petitioner and Officer Dowerin and failed to offer this correspondence as evidence at trial. Petitioner also notes that in its memorandum of decision

denying a writ of habeas corpus, the superior court observed that petitioner's counsel did not produce trial counsel at the hearing on his petition in order that he might give testimony concerning his professional determinations relative to this correspondence, and therefore present counsel may also have provided inadequate representation.

We find no merit to petitioner's contention. There is nothing in the record to compel us to conclude that trial counsel did not have access to the correspondence between petitioner and Officer Dowerin or that there was not an entirely reasonable basis for trial counsel's conduct in regard to this correspondence. Despite the superior court's opinion, petitioner again chose not to supplement the record or to present additional evidence on this issue to this court; consequently, we find it unnecessary to speculate that there is any substantial basis to this particular contention. (See *People v. Fosselman, supra,* 33 Cal.3d 572 , at pp. 581-582.)

■ C. Petitioner suggests that counsel erred in presenting the inconsistent defenses that petitioner did not duplicate photographs in violation of section 311.3, subdivision (a), and that of entrapment. It is well settled that it is proper to do so. "Although the defense is available to a defendant who is otherwise guilty [citation], it does not follow that the defendant must admit guilt to establish the defense. A defendant, for example, may deny that he committed every element of the crime charged, yet properly allege that such acts as he did commit were induced by law enforcement officers." (*People v. Perez* (1965) 62 Cal.2d 769, 775 [44 Cal.Rptr. 326, 401 P.2d 934].) Furthermore, we find no merit in petitioner's argument that it is "unthinkable" to anticipate that such an approach might succeed before an experienced judge. Indeed, the court is more likely than a jury to understand and appreciate the assertion of inconsistent defenses.

■ D. Petitioner claims inadequacy on the part of trial and appellate counsel for their failure to challenge the proof of the time of the commission of the offenses in counts I and II of the complaint in that the only proof submitted concerned the date of manufacture of the film, not the date the photographs were taken. He argues that the manufacturer's code on the film had no relationship to the actual date the photographs were made.

Petitioner's argument ignores the obvious conclusion that the film was used to duplicate existing photographs sometime between the manufacture of the film (Feb. and Apr. 1983) and the date the photographs were seized and petitioner was arrested in July, 1983. The difference in the dates of manufacture supports the conclusion that the duplicates were made on at least two different occasions. It is not necessary to prove the dates of the offenses with exactness, as long as the time is not a material ingredient of

the offense. (§ 955; *People* v. *Mack* (1959) 169 Cal.App.2d 825, 829 [338 P.2d 25].)

### III. *Consecutive Sentencing.*

Petitioner's final major contention is that his sentence of two consecutive one-year terms for his conviction of two counts of violation of section 311.3, subdivision (a), which is the maximum provided for under the terms of subdivision (d) of that section, constitutes multiple punishment for the same offense and cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and under article I, section 17 of the Constitution of California.

The gravamen of petitioner's contention is that the penalty for violation of section 311.3, subdivision (a), is heavier than the punishment for *distribution* of child pornography.

"[A] punishment may violate article 1, section 6, of the Constitution if, although not cruel or unusual in its motive, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) Comparing the challenged penalty with punishments prescribed by the Legislature for other crimes, is one technique for testing its validity. (*Id.,* at p. 426.)

Petitioner's contention lacks merit. At the time of his sentencing in 1983, commercial distribution of obscene materials depicting a child under 18 engaged in explicit sex acts was a felony, punishable in state prison for two, three or four years, or by a fine of up to $50,000 or by both fine and imprisonment. (§ 311.2, subd. (b).)[10] Pursuant to subdivision (c), adopted in 1984, the prescribed punishment for noncommercial distribution of child pornography, whether obscene or not, to a person 18 years of age or older is the same as that for violation of section 311.3, subdivision (a): Imprisonment in county jail for up to one year or a fine not exceeding $2,000, or both, for a first offense. A second offense is a felony. (§§ 311.2, subd. (c), 311.3, subd. (d).) Pursuant to subdivision (d) of section 311.2, also added in 1984, the noncommercial distribution of child pornography to a person under 18 years of age is a felony. (§ 311.2, subd. (d).)[11]

---

[10]Section 311.2, subdivision (b) was amended in 1985 to provide for a term of two, three or *six* years in state prison and a maximum fine of $100,000. (Stats. 1985, ch. 1099, § 5, p. 218.)

[11]Petitioner argues that the punishment provisions of section 311.9, subdivision (a), apply to violations of section 311.2, subdivisions (c) and (d).

Section 311.9, subdivision (a) states: "Every person who violates Section 311.2 or 311.5, except subdivision (b) of Section 311.2, is punishable by a fine of not more than one thousand dollars ($1,000) plus five dollars ($5) for each additional unit of material coming within the provisions of this chapter, which is involved in the offense, not to exceed ten thousand dollars

 "Judicial intervention in the determination of criminal penalties . . . is not to be asserted except in the most extraordinary of cases. As stated in [*In re Lynch* (1972) 8 Cal.3d 410, 423-424]: 'Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, the responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty "out of all proportion to the offense" [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment.' " (*People v. Truett* (1981) 126 Cal.App.3d 156, 164 [178 Cal.Rptr. 535].)

 There is no basis for concluding that the punishment for sexually exploiting a child by the duplication of photographs of the child engaged in sexual conduct is disproportionate to other penalties prescribed in the area of child pornography, including those for distribution.

Petitioner's related contention that his sentence of two consecutive one-year terms constitutes multiple punishment for the same offense overlooks the clearly established findings, supported by substantial evidence in the record, that he duplicated photographs in violation of the statute on at least two separate occasions.

We hold that petitioner's sentence pursuant to subdivision (d) of section 311.3 is constitutionally valid.

CONCLUSION

Judicial concern in the area of sexual exploitation has had a long history.

---

($10,000), or by imprisonment in the county jail for not more than six months plus one day for each additional unit of material coming within the provisions of this chapter, and which is involved in the offense, such basic maximum and additional days not to exceed 360 days in the county jail, or by both such fine and imprisonment. If such person has previously been convicted of any offense in this chapter, or of a violation of Section 313.1, a violation of Section 311.2 or 311.5, except subdivision (b) of Section 311.2, is punishable as a felony."

Petitioner in effect argues that pursuant to subdivision (d) of section 311.3, a person could be sentenced to a term of up to one year for each *unit of material,* i.e., each photograph duplicated in violation of section 311.3, subdivision (a), and could receive up to one year for each, in contrast to the lighter sentences set forth in section 311.9, subdivision (a).

The comparison is faulty because section 311.9, subdivision (a) does not apply to section 311.2, subdivisions (c) and (d), which define both crime and punishment and were enacted in 1984. Section 311.9 subdivision (a) was last amended in 1977. Under generally accepted principles of statutory construction, in the case of apparent conflict between code sections passed at different times, the later provision, as the last expression of the Legislature's will, prevails. (*County of Ventura* v. *Barry* (1927) 202 Cal. 550, 556 [262 P. 1081].)

"I think the test of obscenity is this, whether the tendency of the matter charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands a publication of this sort may fall. Now, with regard to this work it is quite certain that it would suggest to the minds of the young of either sex, or even to persons of more advanced years, thoughts of a most impure and libidinous character."[12]

We similarly are quite certain that the state's compelling interest in protecting its children from sexual exploitation far outweighs the slight intrusion upon the nonabsolute rights of free expression and privacy of the person who desires to possess and duplicate photographs, video tapes or films depicting children engaged in lewd sexual conduct.

### DISPOSITION

The petition for writ of habeas corpus is denied.

Klein, P. J., and Danielson, J., concurred.

A petition for a rehearing was denied March 30, 1987, and petitioner's application for review by the Supreme Court was denied June 25, 1987.

---

[12]Lord Cockburn, C.J., *Regina* v. *Hicklin* (1868) 3 Q.B. 360, 371.)