Filed 6/10/21  P. v. Charles CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ISRAEL CHARLES,<br><br>    Defendant and Appellant. | F078782<br><br>(Super. Ct. No. BF172348A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Jenny M. Brandt, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Israel Charles had been convicted of indecent exposure (Pen. Code,[1] § 314, subd. 1) on four prior occasions. In the instant case, he was charged with felony indecent exposure (*ibid.* [count 1]) and lewd and dissolute conduct in a public place (§ 647, subd. (a) [count 2]). In connection with count 1, the information alleged that defendant previously was convicted of two qualifying "strike" offenses under the Three Strikes law (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)) and served seven separate prison terms (§ 667.5, former subd. (b)). Following trial, the jury found him guilty as charged. In a bifurcated proceeding, the trial court found true each special allegation except for one of the prior prison term allegations. Defendant received an aggregate sentence of 12 years: a doubled upper base term of six years plus six years for six prior prison term enhancements on count 1 and a concurrent 180 days on count 2. As to count 1, he was ordered to pay a $500 repeat sex offender fine plus a $1,550 penalty assessment (§ 290.3); a $40 court operations assessment (§ 1465.8); a $30 court facilities assessment (Gov. Code, § 70373); and a $300 restitution fine (§ 1202.4, subd. (b)). A $300 parole revocation fine (§ 1202.45) was imposed and suspended. As to count 2, defendant was ordered to pay a $40 court operations assessment (§ 1465.8) and a $30 court facilities assessment (Gov. Code, § 70373).

On appeal, defendant makes numerous contentions. First, the admission of two prior indecent exposure convictions into evidence violated his right to due process. Second, the evidence did not support the indecent exposure conviction on count 1. Third, the trial court should have instructed the jury to unanimously agree on the specific lewd act underlying count 2. Fourth, the case should be remanded to allow the court to conduct a mental health diversion eligibility hearing. If this argument is deemed forfeited, defendant alternatively contends that appellate review is warranted because the issue is novel or his attorney rendered ineffective assistance. Fifth, the concurrent

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

2.

sentence imposed on count 2 must be stayed pursuant to section 654. Sixth, the six prior prison term enhancements must be stricken in view of a recent amendment to section 667.5, subdivision (b), enacted by Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill No. 136) (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020). Seventh, the prison sentence constitutes cruel and/or unusual punishment. Finally, before imposing any fines and assessments, the court should have conducted an ability-to-pay hearing pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). If this argument is deemed forfeited, defendant alternatively contends that his attorney rendered ineffective assistance.

In the respondent's brief, the Attorney General agrees that execution of punishment on count 2 must be stayed and the six prior prison term enhancements must be stricken. We accept these concessions.

Additionally, we conclude: (1) the admission of defendant's two prior indecent exposure convictions into evidence did not violate his right to due process; (2) substantial evidence supported the indecent exposure conviction on count 1; (3) the trial court had no obligation to instruct the jury to unanimously agree on the specific lewd act underlying count 2; (4) defendant failed to raise the issue of mental health diversion below and has forfeited the issue on appeal; (5) his sentence does not constitute cruel and/or unusual punishment; and (6) he failed to object to the imposition of fines and assessments on the grounds of inability to pay and has forfeited the issue on appeal.

## STATEMENT OF FACTS[2]

On the morning of Monday, May 21, 2018, Patricia R., a teacher assistant at an alternative high school for at-risk youth, looked outside a window and observed

---

**2** Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names and last initials. No disrespect is intended.

Subsequent citations to rules refer to the California Rules of Court.

defendant and a man with "a long, black ponytail" walking from the nearby parole department building to a bus stop. At some point, she took her eyes off the pair. Shortly thereafter, Patricia's coworker announced, "Oh, look at these two. It looks like she's [*sic*] giving him a blow job." Patricia once again looked outside the window. Defendant, whose back was "towards [her and her coworker]," was standing in front of the man with the ponytail, who was sitting on a bus stop bench. Patricia noticed that the man's head was "moving forward, back, forward, back" "towards the defendant's pelvic region," i.e., the "genital area," for "[n]o more than two minutes." From her perspective, she could not see if defendant's genitalia were exposed. Defendant then sat down on the bench. Patricia did not see him zip up his pants beforehand. The man with the ponytail "pull[ed] down his shirt" and defendant "[p]ut his face toward his breast." Patricia could only see the back of defendant's head and could not see if he placed his mouth on the man's nipple.

Patricia headed outside to admonish defendant and his companion. As she was exiting the school building, she encountered another coworker. Patricia told her, "I'm going to go tell these people they need to stop." The coworker replied, "[Y]es, I see them too." Once outside, Patricia yelled, "We have students in here[!] I said stop what you are doing[!] We have students in here[!]" Defendant and his companion "both jumped up and start[ed] fixing their clothing." Before the two boarded a departing bus, Patricia photographed them with her mobile phone. She then went to the parole department building and showed the photograph to Parole Agent Sellers, who supervised sex offenders. Sellers identified one of the men as defendant, her parolee.

On May 22, 2018, Patricia reported the incident to law enforcement. She subsequently met with Officer Perkins of the Bakersfield Police Department. Later, Perkins visited defendant in county jail and conducted questioning following a *Miranda*[3]

---

[3]     *Miranda v. Arizona* (1966) 384 U.S. 436.

4.

advisement. Defendant acknowledged that he was at the bus stop near the parole department building with "a guy who looked like a girl" the previous day. He "may have spoken to [the guy]" and "may have touched that person but he didn't remember." When Perkins mentioned that "someone had seen him," defendant "recanted [his] statement" and said that he "wasn't there" and "nothing happened at the bus stop."

At trial, Patricia testified that the bus stop was located on a busy thoroughfare with "[a] lot of traffic." The distance between the bus stop and her initial vantage point at the school was approximately 250 feet. Nonetheless, Patricia's view of the bench was unobstructed. Sellers testified that parolees visited the parole department building to check in with parole agents, see clinicians, and attend programs such as "Lit Lab for the school" and "the Star Program for people who have substance abuse problems."

## DISCUSSION

I. **The admission of defendant's two prior indecent exposure convictions into evidence did not violate his right to due process**

a. *Background*

Pursuant to Evidence Code sections 1101, subdivision (b) and 1108, subdivision (a), the prosecution moved in limine to admit into evidence two of defendant's prior indecent exposure convictions. The defense moved in limine to exclude "other offense evidence," "other misconduct evidence," and "propensity evidence" on the grounds of due process and fundamental fairness. (Boldface omitted.) Following a hearing, the trial court granted the prosecution's motion. It reasoned:

> "In this case, the People must prove that the act was done for the purpose of sexually arousing or gratifying himself or another person or sexually offending another person. [¶] So intent is an issue that the People must prove beyond a reasonable doubt and are entitled to prove beyond a reasonable doubt. [¶] So with respect to Evidence Code Section 1101(b), I do believe that both prior acts are relevant to prove that intent element that the People are required to put forth evidence beyond a reasonable doubt.

5.

"With respect to Evidence Code Section 1108(a), . . . it is clear that 1108 allows the admission of this type of evidence without the necessity of intent or some other factor. That is what [Evidence Code section] 1108 is designed to do, is to allow the admission of that type of evidence.

"The only real issue that I see here, because I do find it very probative under [Evidence Code Section] 1101(b) as to the issue of intent on these prior offenses, given the act that has been alleged in this case, would certainly tend to show that the act in this case, based on the prior behavior, was for that purpose of sexually arousing or gratifying himself or another person. [¶] The main question, then, as to both [Evidence Code Sections] 1101(b) and 1108 is under Evidence Code Section 352.

"Obviously, the evidence of the 2017 and 2007 incidents are prejudicial to, in that the jury would hear other sexual misconduct; however, the question is whether that probative value is outweighed by the danger of undue prejudice or confusing the issues or misleading the jury. [¶] The jury, of course, if the evidence is admitted, will be instructed on the limited purpose that they are to consider that evidence.

"I am cognizant that one of the incidents is a little over ten years old; however, that is the incident where a witness observed him pulling out his penis and masturbating in front of her. I think that is relevant to show the intent in this case as a public display of lewd conduct. [¶] And the second case from 2017, again, is similar, where he exposes himself and begins masturbating in a public place and someone observed that. [¶] The incidents are very similar and are very probative.

"As far as any prejudicial effect, again, the jury will be instructed on the limited purpose that they can use those two incidents for. They are rather brief incidents and shouldn't consume much time. [¶] We have a very short case. I don't anticipate this lengthening it any additional time, and I don't think it will confuse the issues given that the jury will be instructed."

Subsequently, the parties stipulated that defendant was convicted of indecent exposure on March 26, 2008, and July 6, 2017. Prior to closing arguments, the court gave the jury limiting instructions.

6.

b. *Analysis*

Defendant claims that the admission of the two prior indecent exposure convictions into evidence "violated [his] right to due process because it was propensity evidence, rendering [his] trial fundamentally unfair."

Generally, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a); accord, *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).) However, "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code] Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).) "Available legislative history indicates [Evidence Code] section 1108 was intended in sex offense cases to relax the evidentiary restraints [Evidence Code] section 1101, subdivision (a), imposed, to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility. In this regard, [Evidence Code] section 1108 implicitly abrogates prior decisions of [the California Supreme Court] indicating that 'propensity' evidence is per se unduly prejudicial to the defense." (*Falsetta*, *supra*, 21 Cal.4th at p. 911.)

"Evidence Code section 1108 'radically changed' the general rule prohibiting propensity evidence in 'sex crime prosecutions.' [Citation.] 'By removing the restriction on character evidence in [Evidence Code] section 1101, [Evidence Code] section 1108 now "permit[s] the jury in sex offense . . . cases to consider evidence of prior offenses for any relevant purpose" [citation], subject only to the prejudicial effect versus probative value weighing process required by [Evidence Code] section 352.' [Citation.] Evidence of prior crimes is admissible, unless otherwise excluded by Evidence Code section 352,

7.

whenever it may be helpful to the jury on a commonsense basis, for resolution of any issue in the case, including the probability or improbability that the defendant has been falsely accused. [Citation.]" (*People v. Robertson* (2012) 208 Cal.App.4th 965, 990, italics omitted.)

" 'To be admissible under Evidence Code section 1108, "the probative value of the evidence of uncharged crimes 'must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.' [Citations.]" [Citation.] "The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense. Other factors affecting the probative value include the extent to which the source of the evidence is independent of the charged offense, and the amount of time between the uncharged acts and the charged offense. The factors affecting the prejudicial effect of uncharged acts include whether the uncharged acts resulted in criminal convictions and whether the evidence of uncharged acts is stronger or more inflammatory than the evidence of the charged offenses." [Citation.] "The weighing process under [Evidence Code] section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." [Citation.]' [Citation.]" (*People v. Robertson*, *supra*, 208 Cal.App.4th at pp. 990-991.) Our Supreme Court has held that "[a] trial court's discretion to exclude propensity evidence under [Evidence Code] section 352 saves [Evidence Code] section 1108 from [a] due process challenge." (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

In view of *Falsetta*, we reject defendant's claim. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["The decisions of [the California Supreme Court] are binding upon and must be followed by all the state courts of California."].) We point out that defendant "concedes that California appellate courts have no authority to part ways with *Falsetta*, have held that an identical claim to that here is 'meritless'

8.

[citation], and that the California Supreme Court has offered no indication that it will overturn *Falsetta*" and only "raises the claim to preserve the issue for federal review."

## II. Substantial evidence supported the indecent exposure conviction on count 1

### a. *Standard of review*

"To determine the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the prosecution to determine whether it contains [substantial] evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955 (*Tripp*).) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755 (*Redmond*).) "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.]" (*Tripp*, *supra*, at p. 955, italics omitted.) "This standard of review also applies to circumstantial evidence. [Citation.] If the circumstances, plus all the logical inferences the jury might have drawn from them, reasonably justify the jury's findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citations.]" (*Ibid*.)

"Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis what[so]ever is there sufficient substantial evidence to support it." (*Redmond*, *supra*, 71 Cal.2d at p. 755.) " 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility

9.

issues nor evidentiary conflicts; we look for substantial evidence.' [Citation.]" (*People v. Lee* (2011) 51 Cal.4th 620, 632.)

b. *Analysis*

"Generally, a conviction for indecent exposure requires proof of two elements: '(1) the defendant must willfully and lewdly expose the private parts of his person; and (2) such exposure must be committed in a public place or in a place where there are present other persons to be offended or annoyed thereby.' [Citation.]" (*People v. Carbajal* (2003) 114 Cal.App.4th 978, 982.) One willfully and lewdly exposes one's private parts if "the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront." (*In re Smith* (1972) 7 Cal.3d 362, 366, fn. omitted.) While an indecent exposure conviction "requires evidence that a defendant actually exposed his or her genitals in the presence of another person" (*People v. Carbajal*, *supra*, at p. 986), "there is no concomitant requirement that such person actually must have seen the defendant's genitals" (*ibid.*). "Thus, we will uphold defendant's conviction for indecent exposure in the absence of evidence of any direct visual observation of his genitals so long as there is sufficient circumstantial evidence to show that actual exposure occurred." (*Ibid.*)

Defendant contends that his indecent exposure conviction "should be reversed because there was insufficient evidence to support the conviction." We disagree. The record—viewed in the light most favorable to the prosecution—contains substantial evidence supporting the conviction. On a weekday morning, defendant and his companion were at a bus stop located on a busy street and near at least two populated facilities: (1) a parole department building, from where the pair had just left and where parolees in general went to see parole agents and clinicians as well as attend various programs; and (2) a high school with school employees and students on campus. According to Patricia, the teacher assistant who had a clear view of the bus stop from the high school, while defendant was standing in front of his seated companion, the latter's

10.

head continuously moved back and forth in the vicinity of the former's crotch for up to two minutes. Although a witness did not testify that he or she could visually confirm that defendant displayed his genitalia, one could reasonably infer from the circumstances that defendant and his companion had engaged in oral copulation and his private parts had been exposed. Thereafter, defendant sat next to his companion, the companion pulled down his shirt, and defendant turned his face toward the companion's bare chest. This conduct signifies that the two were being lascivious and lends additional credence to the aforementioned inferences.

Because defendant and his companion carried out their activities in broad daylight, out in the open, and where other people were close by, one could reasonably infer that defendant intended to "direct public attention to his genitals for purposes of sexual arousal, gratification, or affront." (*In re Smith*, *supra*, 7 Cal.3d at p. 366, fn. omitted; see *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 ["Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction."]; *People v. Pre* (2004) 117 Cal.App.4th 413, 420 ["Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense."].) The parties also stipulated that defendant was convicted of indecent exposure on two prior occasions. (See *Falsetta*, *supra*, 21 Cal.4th at p. 920 ["[E]vidence of a defendant's other sex offenses constitutes relevant circumstantial evidence that he committed the charged sex offenses."].) Lastly, during Perkins' interrogation, defendant originally conceded that he was at the bus stop with and "may have touched" his companion, but he immediately retracted his statement when told about an eyewitness. One could reasonably infer that defendant "knowingly made a false statement about his whereabouts at the time of the [offense]" (*People v. Bowman* (2011) 202 Cal.App.4th 353, 366), evincing consciousness of guilt (see CALCRIM No. 362).

Defendant suggests that his conviction should be reversed because the evidence demonstrated that he did not intentionally direct public attention to his genitalia. He

11.

stresses that he and his companion discontinued their activities and left the scene after they were confronted and berated by Patricia. Defendant essentially asks us to reevaluate the record and consider only evidence that may be in his favor. We will not do so. Under a substantial evidence standard of review, we "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*Redmond*, *supra*, 71 Cal.2d at p. 755.) "It is not our function to reweigh the evidence, reappraise the credibility of witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact." (*Tripp*, *supra*, 151 Cal.App.4th at p. 955.) The circumstances preceding the encounter with Patricia sufficiently supported a finding of the requisite intent. A rational trier of fact may not have been convinced that defendant and his companion's subsequent decision to stop and leave established a contrary finding or was otherwise probative on the issue of mens rea.

## III. The trial court had no obligation to instruct the jury to unanimously agree on the specific lewd act underlying count 2

### a. *Background*

With respect to count 2, the court instructed the jury:

"[CALCRIM No. 1161 (Lewd Conduct in Public):] The defendant is charged in Count 2 with engaging in lewd conduct in public, in violation of Penal Code Section 647(a). To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant willfully engaged in the touching of his own or another person's genitals or female breast; two, the defendant did so with the intent to sexually arouse or gratify himself or another person or to annoy or offend another person; three, at the time the defendant engaged in the conduct, he was in a public place; four, at the time the defendant engaged in the conduct, someone else who might have been offended was present; and, five, the defendant knew or reasonably should have known that another person who might have been offended by his conduct was present."

In its closing argument and rebuttal, the prosecution stated, in pertinent part:

"So what is the second count? Count 2 is Penal Code Section 647(a). And this is basically lewd conduct in public. . . . There are five

12.

elements I have to prove to you. I'm going to go through each one of them again like the last one. So the first, the defendant willfully engaged in the touching of his or her own genitals. So what do we know? The defendant, again his genitals are out. He's engaging in this oral sex act with the female [*sic*] present. The only logical information presented from the evidence from the two individuals at that bus stop is that they were engaging in oral sex.

"The second element is that defendant did so with the intent to sexually arouse or gratify himself. So he was doing this, he was having the female [*sic*] perform oral sex on him for the purpose of sexually arousing, gratifying him. Again, the Court, the law states that you can use his two prior instances to help with that information. [¶] . . . [¶]

"[Regarding] CALCRIM 1161 . . . the defendant willfully engaged in the touching of his own or another person's genitals or female breast. [¶] That is basically he is engaging in the act of touching his own genitals. That is the situation where the female [*sic*], the other individual there, is providing oral sex on the defendant. [¶] . . . [¶]

"I don't have to prove the defendant saw [Patricia] prior to engaging in oral sex. All I have to prove is that he reasonably should have known people were present. He just came from the parole office that was open for business attending classes. There is a school across the street. It is a busy street. He reasonably should have known. He is waiting at a bus stop. He reasonably should have known people are present. And people were present in that school across the street."

b. *Analysis*

"In a criminal case, a jury verdict must be unanimous." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; see Cal. Const., art. I, § 16.) "Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime." (*Russo*, *supra*, at p. 1132.) "Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid*.) "When the prosecutor does not make an election, the trial court has a sua sponte duty to instruct the jury on unanimity." (*People v. Mayer* (2003) 108 Cal.App.4th 403, 418.) " 'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of

13.

which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.]" (*Russo*, *supra*, at p. 1132.) Whether a particular instruction should have been given in a case is a predominantly legal question reviewed under the de novo standard. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Defendant claims that "[t]he trial court had a duty to instruct the jury that they had to be unanimous in deciding which act constituted the lewd act in public as alleged in count two . . . ." He is mistaken. During summation, the prosecution clearly identified oral copulation of defendant's genitalia—not defendant's touching of his companion's breast—as the lewd act underlying count 2. "The prosecutor's statements and arguments were an election for jury unanimity purposes." (*People v. Mayer*, *supra*, 108 Cal.App.4th at p. 418.) Therefore, the court did not need to provide a unanimity instruction. Defendant cites *People v. Smith* (2005) 132 Cal.App.4th 1537, which is factually inapposite. That case did not involve an unequivocal election made by the prosecution.

## IV. Defendant failed to raise the issue of mental health diversion at the trial court level and has forfeited the issue on appeal

On June 27, 2018, the Legislature enacted section 1001.36, which took effect immediately. (Stats. 2018, ch. 34, §§ 24, 37.) Under this provision, certain defendants suffering from qualifying mental disorders may be eligible for pretrial diversion (§ 1001.36, subd. (a)), defined as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment" (*id.*, subd. (c)). "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id.*, subd. (e).) The defendant is the one who must raise the issue of diversion. (See *id.*,

14.

subd. (b)(1)(A) ["Evidence of the defendant's mental disorder shall be provided by the defense and shall include a recent diagnosis by a qualified mental health expert."].)

Defendant contends that the case should be remanded to allow the court to conduct a mental health diversion eligibility hearing. However, the record shows that trial commenced on December 12, 2018, the jury rendered its guilty verdict on December 18, 2018, and the sentencing hearing took place on January 29, 2019. Section 1001.36 had already been in effect for months before defendant was convicted and sentenced. Generally, "a party may forfeit a right to present a claim of error to the appellate court if he did not do enough to 'prevent[]' or 'correct[]' the claimed error in the trial court [citation] . . . ." (*People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6.) In his brief, defendant concedes that he "did not request a hearing on [his] eligibility for mental health diversion, even though [section 1001.36] was effective as of the date of [his] sentencing." His failure to raise the issue of mental health diversion has forfeited the issue on appeal.

In passing, defendant asks us to "reach the merits of the issue" because "the mental health diversion statute was relatively new, having been enacted less than a year before [his] case was adjudicated." "An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party." (*People v. Williams*, *supra*, 17 Cal.4th at p. 162, fn. 6.) "Whether or not it should do so is entrusted to its discretion." (*Ibid.*) Given defendant's ample opportunity to raise the issue below, we decline his request.

Defendant then argues that "this Court should reach the merits of the issue because trial counsel was ineffective in failing to request a hearing." "In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance." (*People v. Mickel* (2016) 2 Cal.5th 181, 198 (*Mickel*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.) "To demonstrate deficient performance, defendant bears the burden of showing that counsel's performance

15.

' " ' "fell below an objective standard of reasonableness . . . under prevailing professional norms." ' " ' [Citation.] To demonstrate prejudice, defendant bears the burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. [Citations.]" (*Mickel, supra,* at p. 198.)

"[C]ertain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding." (*Mickel, supra,* 2 Cal.5th at p. 198.) "The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Ibid.*) "Moreover, we begin with the presumption that counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' [Citation.] Accordingly, [the California Supreme Court] ha[s] characterized defendant's burden as 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission. [Citation.]" (*Ibid.*)

The record before us does not reveal why defense counsel did not request a hearing on defendant's eligibility for mental health diversion. Absent any affirmative evidence that there was no rational tactical purpose for counsel's forbearance, "it would be inappropriate for us to address defendant's ineffectiveness claim on direct appeal." (*Mickel, supra,* 2 Cal.5th at p. 200.)

Defendant maintains that "[t]here could be no tactical reason for failing to request a mental health diversion" "because there could be no harm to [him] in requesting the hearing" "as he had already been convicted of the offense" and "the chance to avoid a prison sentence could only benefit [him]." We disagree. There could have been

16.

legitimate reasons why defense counsel may have chosen not to pursue a mental health diversion eligibility hearing on defendant's behalf. For instance, counsel may have concluded that defendant did not suffer from a qualifying mental disorder or, in the alternative, said condition did not play a significant role in the commission of the charged offenses. Also, counsel could have discussed the matter with defendant, but the latter refused to consent to diversion or comply with mental health treatment. We once again emphasize that the record is silent on the matter.

Having found forfeiture, our analysis ends.

## V. Execution of punishment on count 2 must be stayed pursuant to section 654

Next, defendant contends that "[his] sentence for a lewd act (count two) should be stayed because it was part of the same course of conduct as indecent exposure (count one)." (Boldface & capitalization omitted.) The Attorney General acknowledges that "[defendant's] claim has merit because his convictions for both offenses were based on the exact same conduct."

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) In other words, section 654 "prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.) Here, oral copulation of defendant's genitalia formed the basis of the indecent exposure charge on count 1. As we discussed, the prosecution unequivocally elected this conduct as the lewd act underlying count 2. Therefore, execution of punishment on count 2 must be stayed.

## VI. The six prior prison term enhancements must be stricken in light of Senate Bill No. 136

At the time defendant was sentenced, section 667.5, former subdivision (b), provided, in part:

"[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony . . . ."

After defendant was sentenced, but while his case was still pending on appeal, the Legislature enacted Senate Bill No. 136 (Stats. 2019, ch. 590, § 1), which now provides, in pertinent part:

"[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code . . . ." (§ 667.5, subd. (b).)

Defendant asserts that Senate Bill No. 136 applies retroactively to the case and asks us to strike the six prior prison term enhancements because none of the underlying offenses was a sexually violent offense. The Attorney General agrees. We accept this concession and will strike these prior prison term enhancements. (See *People v. Lopez* (2019) 42 Cal.App.5th 337, 342 ["Because the trial court imposed the maximum possible sentence, there is no need for the court to again exercise its sentencing discretion."].)

## VII. Defendant's prison sentence does not constitute cruel and unusual punishment[4]

### a. *Background*

#### i. Probation officer's report

Defendant was born on January 15, 1966. He related that he has an "11th grade" education, "is currently taking a[n] unknown medication for high blood pressure and . . . unknown psychotropic medications for hearing voices and depression," "suffers from

---

**4**     Because we reach the merits of this issue, we need not address the Attorney General's estoppel claim.

18.

allergies," "has been diagnosed with depression, personality disorders and mood swings," and "attends AA/NA meetings."

According to defendant, he "began drinking alcohol at the age of three or four." He "began using marijuana at the age of 12," "us[ed] PCP on two occasion[s] at the age of 17," "began using cocaine" "[a]t the age of 19," "began using methamphetamine at the age of 19," and "experiment[ed] with heroin on one occasion when he was 40." Defendant stated that he "last consumed alcohol on January 24, 2018" and does not consider himself "an alcoholic or heavy drinker." When "asked if he was drinking" at the time of the May 21, 2018 incident, defendant claimed that he consumed "at least a pint of tequila prior to the offense." When "asked if his alcohol use played a role in the commission of the offense," he asserted, " 'Yes, I wouldn't have did [*sic*] that.' " Defendant stated that he "last used [marijuana] in 2016," used cocaine "until he was 28 years old," and "last used methamphetamine on January 8, 2017." He considers himself "a drug addict" and expressed interest in residential treatment.

On March 8, 1985, defendant was convicted of trespassing (§ 602, subd. (*l*)). He received a 24-day jail sentence and was placed on misdemeanor probation for three years. Defendant violated his probation on March 16, 1987, and received an additional 150-day jail sentence.

On March 28, 1985, defendant was convicted of unauthorized entry of property (§ 602.5) and theft (§ 484). He received a 54-day jail sentence and was placed on misdemeanor probation for three years. Defendant violated his probation on April 1, 1986, and received an additional 45-day jail sentence.

On September 20, 1985, defendant was convicted of trespassing (§ 602, subd. (*l*)). He received a two-day jail sentence and was placed on misdemeanor probation for three years. Defendant violated his probation on March 16, 1987, and received an additional 178-day jail sentence.

On May 19, 1986, defendant was convicted of second degree burglary (§ 459). He received a 180-day jail sentence and was placed on felony probation for three years. Defendant violated his probation on October 6, 1988, and received a two-year prison sentence.

On July 9, 1987, defendant was convicted of first degree burglary (§ 459). He received a two-year prison sentence. This burglary conviction was the first of two "strikes" found true beyond a reasonable doubt by the trial court in the instant case. Defendant was paroled on June 6, 1988.

On October 6, 1988, defendant was convicted of first degree burglary (§ 460, former subd. 1) and found to have been previously convicted of a serious felony (§ 667, subd. (a)). He received a nine-year prison sentence. This burglary conviction was the second of two "strikes" found true beyond a reasonable doubt by the trial court in the instant case. Defendant was paroled on September 28, 1994. Between 1994 and 1998, he violated his parole five times. Defendant was discharged on December 1, 1998.

On January 26, 1995, defendant was convicted of battery (§ 243, subd. (a)) and brandishing a weapon (§ 417, subd. (a)(1)). He received a 30-day jail sentence and was placed on misdemeanor probation for three years.

On January 10, 1996, defendant was convicted of misdemeanor assault with a deadly weapon other than a firearm (§§ 17, 245, subd. (a)(1)). He received a one-year jail sentence. Probation was denied.

On November 12, 1996, defendant was convicted of public intoxication (§ 647, subd. (f)) and found to have violated a county ordinance prohibiting after-hours use of public parks. He received a 60-day jail sentence. Probation was denied.

On September 24, 1997, defendant was convicted of loitering (§ 647, subd. (h)). He received a 60-day jail sentence. Probation was denied.

On February 11, 1999, defendant was convicted of misdemeanor petty theft with a prior theft-related conviction (§§ 17, 666). He received a one-year jail sentence. Probation was denied.

On December 10, 1999, defendant was convicted of misdemeanor receipt of stolen property (§§ 17, 496, subd. (a)). He received a 50-day jail sentence and was placed on misdemeanor probation for three years.

On January 20, 2000, defendant was convicted of indecent exposure (§ 314, subd. 1). He received a one-year jail sentence. Probation was denied.

On May 9, 2000, defendant was convicted of petty theft with a prior theft-related conviction (§ 666) and resisting arrest (§ 148). With respect to the theft conviction, he was found to have previously been convicted of a qualifying "strike" offense (§ 667, subd. (e)) and served two separate prison terms (§ 667.5, former subd. (b)). Defendant received an eight-year prison sentence.

On December 20, 2001, while in prison, defendant was convicted of indecent exposure (§ 314, subd. 1). He received a 16-month prison sentence. Defendant was paroled on October 3, 2007.

On March 26, 2008, defendant was convicted of felony indecent exposure (§ 314, subd. 1) and found to have previously been convicted of a qualifying "strike" offense (§ 667, subd. (e)). He received a six-year prison sentence and was ordered to register as a sex offender (§ 290). Defendant was paroled on December 26, 2012.

On August 30, 2013, defendant was convicted of second degree burglary (§ 460, subd. (b)) and found to have previously been convicted of two qualifying "strike" offenses (§ 667, subd. (e)). He received a four-year prison sentence. Defendant was paroled on September 25, 2016.

On July 6, 2017, defendant was convicted of felony indecent exposure (§ 314, subd. 1). He received a 16-month prison term. Defendant was paroled on January 21, 2018.

During a January 7, 2019 interview, defendant "did not admit culpability" regarding the May 21, 2018 incident. He stated:

> " 'I was just standing there. The other person was sitting down. Someone said they saw the lady's head moving up and down as if orally copulating. But it wasn't me. This is the only time I've gone to trial because I'm not guilty, not for indecent exposure.' "

On the Static-99R, "an actuarial measure of risk for sexual offense recidivism," defendant scored "8," signifying a "well above average risk" of "being charged or convicted of another sexual offense within five years after he is released on probation." (Boldface omitted.) "Based on the most recent 2015 norms, the estimated risk for this score on the Static-99R is 35.1% over five years . . . ." (Boldface omitted.)

The probation officer concluded that "the upper term in sentencing is justified and will be recommended."

### ii. Sentencing

At the sentencing hearing, the trial court pronounced:

> "As to circumstances in mitigation, I find there are none.
>
> "As to circumstances in aggravation, I do find that his prior convictions as an adult are numerous. He was on state parole when the crime was committed, and his performance on probation and parole was unsatisfactory, in that he violated terms and continued to reoffend.
>
> "He is not eligible for felony probation because of Penal Code Section 667(c)(2). Even if eligible, he is an absolute[ly] unsuitable candidate for a probationary sentence.
>
> "In weighing those factors in aggravation against the no factors in mitigation, I do feel that the upper term as recommended by Probation is the appropriate term.
>
> "So with respect to Count 1, probation is denied, and he is sentenced to the Department of Corrections for the [doubled] upper term of six years . . . ."

b. *Analysis*

"Indecent exposure is a misdemeanor under California law. The admission of a prior conviction of indecent exposure elevates a second conviction, however, to a felony permitting incarceration in prison for sixteen months, two or three years." (*People v. Truett* (1981) 126 Cal.App.3d 156, 159 (*Truett*), citing former § 18; see *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196 ["[A] trial court is free to base an upper term sentence upon any aggravating circumstance that (1) the court deems significant and (2) is reasonably related to the decision being made."].)

"Under the three strikes law, defendants are punished not just for their current offense but for their recidivism." (*People v. Cooper* (1996) 43 Cal.App.4th 815, 823 (*Cooper*).) "If . . . a defendant has one prior strike conviction that has been pleaded and either proved or admitted, the determinate term for the current felony offense is twice the term otherwise provided as punishment." (*People v. Sok* (2010) 181 Cal.App.4th 88, 93, fn. omitted, citing §§ 667, subd. (e)(1), 1170.12, subd. (c)(1); see *People v. Vargas* (2014) 59 Cal.4th 635, 638 ["[I]f a defendant reoffends after having suffered a first qualifying felony conviction, a doubled sentence is mandatory."]) "[W]hen a defendant has two prior strikes and his current felony is not a strike, the defendant is to be sentenced pursuant to section 667, subdivision (e)(1)—that is, as if the defendant had only one prior strike—to twice the term otherwise provided for the current felony, unless one of the exceptions or disqualifying factors described in section 667, subdivision (e)(2)(C) applies." (*People v. Tennard* (2017) 18 Cal.App.5th 476, 483, italics omitted; accord, §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).)

Defendant argues that his sentence "is cruel and unusual in violation of the Eighth Amendment to the United States [C]onstitution and Article 1, section 17 of the California Constitution." He specifies that the doubled upper base term of six years for "receiving oral sex in public is grossly disproportionate to the nature of the offense and [his] personal circumstances."

23.

" 'The Eighth Amendment to the United States Constitution applies to the states. [Citation.]  It prohibits the infliction of "cruel *and* unusual" punishment.  [Citation.] Article I, section 17 of the California Constitution prohibits infliction of "[c]ruel *or* unusual" punishment.  [Citation.]  The distinction in wording is "purposeful and substantive rather than merely semantic.  [Citations.]"  [Citation.]  As a result, we construe the state constitutional provision "separately from its counterpart in the federal Constitution.  [Citation.]"  [Citation.]'  [Citation.]"  (*People v. Baker* (2018) 20 Cal.App.5th 711, 723; see *People v. Haller* (2009) 174 Cal.App.4th 1080, 1092 ["Whereas the federal Constitution prohibits cruel 'and' unusual punishment, California affords greater protection to criminal defendants by prohibiting cruel 'or' unusual punishment."].)

i.  California

"A sentence may violate the state constitutional ban on cruel [or] unusual punishment [citation] if ' ". . . it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." ' [Citation.]"  (*People v. Thongvilay* (1998) 62 Cal.App.4th 71, 87-88.)  "In order to determine whether a particular punishment is disproportionate to the offense for which it is imposed, we conduct a three-pronged analysis.  [Citations.]  First, we examine the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.  A look at the nature of the offense includes a look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts.  A look at the nature of the offender includes an inquiry into whether 'the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.'  [Citation.]  Next, we compare the challenged punishment with the punishment prescribed for more serious crimes in the same jurisdiction.  And finally, the challenged punishment is compared with

24.

punishment for the same offense in other jurisdictions." (*Id*. at p. 88.) "This three-pronged analysis provides guidelines for determining whether a punishment is cruel or unusual. The importance of each prong depends on the facts of each case." (*Ibid*.)

" 'Our Supreme Court has emphasized "the considerable burden a defendant must overcome in challenging a penalty as cruel or unusual. The doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely in the domain of the Legislature. Perhaps foremost among these are the definition of crime and the determination of punishment. While these intrinsically legislative functions are circumscribed by the constitutional limits of article I, section 17, the validity of enactments will not be questioned 'unless their unconstitutionality clearly, positively, and unmistakably appears.' " [Citation.]' [Citation.]" (*People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1390.)

" 'Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment.' [Citations.]" (*People v. Rhodes*, *supra*, 126 Cal.App.4th at p. 1390.)

### 1. Nature of the offense and the offender

As we discussed, there was substantial evidence that defendant exposed his genitalia and engaged in oral copulation with his companion at a bus stop located on a busy street, on a weekday, in broad daylight, and in plain view of a high school in session and a government agency building open to visitors. (Cf. *In re Lynch* (1972) 8 Cal.3d 410, 437-438 [petitioner masturbated alone inside his vehicle sometime after midnight].) At the time of the incident, defendant—then 52 years of age—had been on parole for four months from a 2017 indecent exposure conviction. (See rule 4.421(b)(4); see also *Truett*, *supra*, 126 Cal.App.3d at p. 161 [the defendant committed "last incident of indecent exposure" "within a month of his escape from a medical institution" and "at a time when he was subject to a warrant for arrest for violation of his probation"].) The record exhibits an extensive criminal history. Between 1985 and 2017, defendant was convicted

25.

over 20 times of various offenses, ranging from trespassing to first and second degree burglaries. (See rule 4.421(b)(2).) He had four prior indecent exposure convictions and his Static-99R score indicates a "well above average risk" for sexual offense recidivism. (See *People v. Sullivan* (2007) 151 Cal.App.4th 524, 570 (*Sullivan*) [" 'Recidivism in the commission of multiple felonies poses a manifest danger to society justifying the imposition of longer sentences for subsequent offenses.' "].) Defendant served numerous jail and prison terms (see rule 4.421(b)(3)) and repeatedly violated his probation and parole (see rule 4.421(b)(5)).

On appeal, defendant maintains that his "personal circumstances mitigate his culpability." (Boldface omitted.) He states that he "suffers from a mental condition that would not [*sic*] doubt affect his impulse control," "suffers from addiction," "drunk [*sic*] a pint of tequila before the incident," and "was willing to accept treatment for his addiction." (See rule 4.423(b)(2), (c).) However, aside from these self-serving representations, the record is devoid of any probative evidence of a mental illness (cf. *People v. Steele* (2000) 83 Cal.App.4th 212, 226 [court provided with psychiatric evaluation]) and "there was no indication [defendant] was in any way under the influence of narcotics [or alcohol] at the time of the instant offenses" (*People v. Reid* (1982) 133 Cal.App.3d 354, 371). Defendant's own accounts of the incident made no mention of a mental condition or intoxication. He initially admitted to Officer Perkins that he was at the bus stop with, and "may have touched," his companion but then "recanted [his] statement" and said that he "wasn't there" and "nothing happened at the bus stop." During an interview with the probation officer, which took place nearly three weeks after the jury's guilty verdict, defendant stated that he "was just standing there" and "it wasn't [him]."

## 2. Punishment for more serious crimes in California

Next, defendant contends that his sentence "is grossly disproportionate considering sentences for other offenses in California." In his opening brief, he

highlights the possible prison terms for voluntary manslaughter (see § 193, subd. (a) ["3, 6, or 11 years"]), rape (see § 264, subd. (a) ["for three, six, or eight years"]), and child molestation (see § 288, subd. (a) ["for three, six, or eight years"]). These comparisons are unavailing. First, "the maximum punishment for the hypothecated crimes may be more severe than defendant received." (*Sullivan*, *supra*, 151 Cal.App.4th at p. 571.) Second, "proportionality assumes a basis for comparison. When the fundamental nature of the offense and the offender differ, comparison for proportionality is not possible." (*Cooper*, *supra*, 43 Cal.App.4th at p. 826.) Here, defendant is subject to a six-year sentence not "merely on the basis of his current offenses alone, but also for his recidivist behavior." (*Sullivan*, *supra*, at p. 571.) "[A] comparison of [his] 'punishment for his current crimes with the punishment for other crimes in California is inapposite since it is his recidivism in combination with his current crimes that places him under the three strikes law.' [Citation.]" (*Ibid*.) "California statutes imposing more severe punishment on habitual criminals have long withstood constitutional challenge." (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1136-1137.) " 'Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals,' we cannot logically compare [defendant]'s 'punishment for his [current offenses,] which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons.' " (*Sullivan*, *supra*, at p. 571.)

In his reply brief, defendant points out that he "could have the same sentence as a second striker" who commits either robbery (see § 213, subd. (a)(1)(B) [base term of "three, four, or six years"]); carjacking (see § 215, subd. (b) [base term of "three, five, or nine years"]); voluntary manslaughter (see § 193, subd. (a) [base term of "3, 6, or 11 years"]; involuntary manslaughter (see *id.*, subd. (b) [base term of "two, three, or four years"]); felony vehicular manslaughter (see *id.*, subd. (c)(1) [base term of "two, four, or six years"]); child molestation (see § 288, subd. (a) [base term of "three, six, or eight years"]); pimping and pandering a minor under 16 years of age (see § 266h, subd. (b)(2)

[base term of "three, six, or eight years"]); or forcible sexual penetration (see § 289, subd. (a)(1)(A) [base term of "three, six, or eight years"]).  These comparisons are yet again unavailing because "the maximum punishment for the hypothecated crimes may be more severe than defendant received."  (*Sullivan*, *supra*, 151 Cal.App.4th at p. 571.)  Defendant also suggests that his sentence is cruel and unusual because "[s]omeone who has sex with an animal, even if he did so in public, would serve a sentence *twelve times* lower than [him]."  His premise that sexual contact with an animal is "much more severe" than felony indecent exposure is inconsistent with the fact that the Legislature classified the former as a misdemeanor.  (§ 286.5, subd. (a); see *Truett*, *supra*, 126 Cal.App.3d at p. 164 ["No ground exists for concluding that the repeated offense of indecent exposure may not be classified by the Legislature as a felony."])

### 3.  Punishment for the same offense in other jurisdictions

Lastly, defendant contends that his sentence "is grossly disproportionate considering sentences for similar crimes in other states."  In his opening brief, he lists the possible punishment for indecent exposure in Texas ("punishable by 180 days in jail"), second offense indecent exposure in Nevada ("one to four years"), and public lewdness in New York ("up to three months in prison").  In his reply brief, defendant cites additional penal statutes from other states and purports that California's upper base term of three years is "longer than the maximum term in 33 states" and only five states—Alabama, Idaho, Montana, New Hampshire, and Oklahoma—"have the potential for a punishment of more than six years"

"Even if it could be said that defendant's penalty 'exceed[s] the punishments decreed for the offense in a significant number of [other jurisdictions] . . . ' [citation], this is but one measure of excessiveness."  (*People v. Meeks* (2004) 123 Cal.App.4th 695, 710.)  "[T]he needs and concerns of a particular state may induce it to treat certain crimes or particular repeat offenders more severely than any other state."  (*Cooper*, *supra*, 43 Cal.App.4th at p. 827.)  "The choice of [a] fitting and proper penalty is not an exact

science but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will." (*Ibid*.)  The state's constitutional prohibition against cruel or unusual punishment "does not require California to march in lockstep with other states in fashioning a penal code." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.)  "Otherwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct." (*Ibid*.)

"[V]iewed against the backdrop of the other two [primary] considerations," i.e., the nature of the offense and the offender and the comparison of the challenged punishment with the punishment prescribed for more serious crimes in California, "a comparison of the laws in other states is not so significant that it demands a finding of excessiveness in this instance." (*People v. Meeks*, *supra*, 123 Cal.App.4th at p. 710.)

### 4.  Conclusion

Defendant's sentence—an upper base term of three years, doubled to six years pursuant to the Three Strikes law—is not so disproportionate that it shocks the conscience and offends fundamental notions of human dignity. (Cf. *In re Lynch*, *supra*, 8 Cal.3d 410 [former statute's aggravated penalty of one year to life for second-offense indecent exposure constituted cruel or unusual punishment due to unreasonably high maximum term].)  To suggest otherwise "is, in our view, to verge on the absurd." (*Truett*, *supra*, 126 Cal.App.3d at p. 161.)

### ii.  Federal

"The Eighth Amendment to the federal Constitution contains a 'narrow proportionality principle' that applies to noncapital sentences by which a court determines whether a sentence constitutes cruel and unusual punishment.  [Citation.] ' "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." [Citation.]' [Citation.]  To apply this principle, courts compare the gravity of

29.

the offense with the magnitude of the penalty. [Citation.] The gravity of the offense also takes account of the defendant's recidivism and the Legislature's choice of sanctions. [Citation.]" (*People v. Johnson* (2010) 183 Cal.App.4th 253, 296.)

In light of our conclusion that defendant's sentence did not violate our state's constitutional prohibition against cruel or unusual punishment, which "affords greater protection" than its federal counterpart (*People v. Haller*, *supra*, 174 Cal.App.4th at p. 1092), we necessarily find that defendant's sentence is not grossly disproportionate to his crime.

## VIII. Defendant failed to object to the imposition of fines and assessments on the grounds of inability to pay and has forfeited the issue on appeal

At the January 29, 2019 sentencing hearing, as to count 1, the court ordered defendant to pay a repeat sex offender fine of $500 plus a penalty assessment of $1,550 (§ 290.3); a restitution fine of $300 (§ 1202.4, subd. (b)); a court operations assessment of $40 (§ 1465.8); and a court facilities assessment of $30 (Gov. Code, § 70373). A parole revocation fine of $300 (§ 1202.45) was imposed and suspended. As to count 2, the court ordered defendant to pay a court operations assessment of $40 (§ 1465.8) and a court facilities assessment of $30 (Gov. Code, § 70373). Defendant did not object to these fines and assessments on the grounds of inability to pay.

On appeal, defendant contends that the fines and assessments "should be stayed or stricken" because they "were imposed without a determination as to whether [he] had the ability to pay them." His argument is based on *Dueñas*, which was filed three weeks before his sentencing hearing. In that case, Division Seven of the Second Appellate District held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or assessments. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164; accord, *People v. Castellano* (2019) 33 Cal.App.5th 485, 488-489.) However, other courts—including our own—have disagreed. (See, e.g., *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1067-1072, review

denied Dec. 11, 2019 [*Dueñas* was wrongly decided and an 8th Amend. analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive].)  Presently pending before our Supreme Court is *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, in which review is limited to (1) whether a court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments, and (2) if so, which party bears the burden of proof regarding defendant's inability to pay.

Assuming, arguendo, that *Dueñas* applies to this case, we find that any claim as to defendant's alleged inability to pay the fines and assessments has been forfeited.  First, *Dueñas* had already been decided by the time of defendant's sentencing hearing.  Second, he was ordered to pay the repeat sex offender fine plus a penalty assessment pursuant to section 290.3, subdivision (a).  This provision requires a qualifying defendant to " 'be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine.'  [Citation.]" (*People v. Acosta* (2018) 28 Cal.App.5th 701, 705.)  In other words, section 290.3 "expressly contemplates an objection based on inability to pay." (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153.)  "The California Supreme Court has repeatedly held that when a court imposes fees and/or fines pursuant to statutes that specifically include ability to pay findings, the defendant must raise an objection at the sentencing hearing or forfeit the appellate claim that the court failed to make such a finding or there was no evidence of the defendant's ability to pay the imposed amounts." (*People v. Aviles*, *supra*, 39 Cal.App.5th at p. 1073.)

Defendant asserts that his claim "is cognizable even though trial counsel did not request an ability-to-pay hearing because trial counsel was ineffective in failing to request the hearing in violation of [his] Sixth and Fourteenth Amendment rights."  As we

31.

discussed, "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding" (*Mickel*, *supra*, 2 Cal.5th at p. 198) since "a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission" (*ibid.*). The record before us does not reveal why defense counsel did not request an ability-to-pay hearing. Absent any affirmative evidence that there was no rational tactical purpose for counsel's forbearance, "it would be inappropriate for us to address defendant's ineffectiveness claim on direct appeal." (*Id.* at p. 200.)

Defendant maintains that "[t]here could be no tactical reason for failing to request an ability-to-pay hearing because the record showed that [he] was indigent" "and there could be no harm to [him] to request a hearing." We disagree. There could have been legitimate reasons why defense counsel may have chosen not to seek an ability-to-pay hearing. While the record shows that defendant reported "$300-$400/mo" in income, "$190/mo" in "food stamps," and a short-term job in 2013 in which he performed "odd jobs" for "$40/dy" for "2 or 3 mos," counsel could have been privy to information that defendant "would be able to work in the future or would have access to assets or income not mentioned in the probation report sufficient to pay" the fines and assessments. (*People v. Acosta*, *supra*, 28 Cal.App.5th at pp. 706-707.) We once again emphasize that the record is silent on the matter.

Having found forfeiture, our analysis ends.

## DISPOSITION

The concurrent sentence imposed on count 2 is stayed pursuant to section 654. The six prior prison term enhancements imposed pursuant to section 667.5, former subdivision (b), are stricken. The trial court shall prepare an amended abstract of judgment reflecting these modifications and defendant's resulting total prison sentence of

six years and shall transmit certified copies thereof to the appropriate authorities.  In all other respects, the judgment is affirmed.

DETJEN, J.

WE CONCUR:

HILL, P.J.

PEÑA, J.